OF

THE STATE OF NEW JERSEY.

1925.

EDWIN ROBERT WALKER, ORDINARY.

EDMUND B. LEAMING, VIVIAN M. LEWIS, JOHN H. BACKES,
JOHN GRIFFIN, JOHN E. FOSTER, MALCOLM G. BU-
CHANAN, JAMES F. FIELDER, ALONZO CHURCH,
ROBERT H. INGERSOLL, JOHN BENTLEY
AND MAJA LEON BERRY, VICE-
ORDINARIES.

In the matter of the appeal from a decree of the Passaic
county orphans court, admitting to probate a certain
paper-writing purporting to be the last will and testa-
ment of FRANZ ULRICH, deceased.

[Decided November 7th, 1925.]

1. When a gift by deed or otherwise than by will is made to one
who stands in a fiduciary relation to the donor, that gift is pre-
sumed to have been obtained by undue influence, and while the
principle is not strictly applicable to wills, still the fact of a fidu-
ciary relationship of trust and confidence, coupled with other cir-

cumstances, indicating a bias or feeling hostile to the natural object of one's bounty, usually more readily makes a case of undue influence than without the fiduciary or trust relation.

2. The active agency of the beneficiary of a will in procuring it to be drawn in his favor, especially in the absence of those who have, at least, an equal claim upon the justice of the testator, and where the testator is enfeebled by old age and disease, is a circumstance strongly indicative of undue influence.

3. Evidence examined, and *held* that the will was the product of undue influence, and its probate should be refused.

On appeal.

*Mr. John W. Harding* and *Mr. Edward F. Merrey,* for the appellants.

*Messrs. McCran & Pomfret,* for the respondents.

LEWIS, VICE-ORDINARY.

This is an appeal by the caveators from a decree of the Passaic county orphans court, admitting to probate the last will and testament of Franz Ulrich, deceased. No written opinion has been filed in the orphans court.

The will was attacked in the court below as being the product of the undue influence of one of the proponents, Langley J. Burchill, a son-in-law of the testator. At the time of his death the testator was eighty-three years of age. He died July 24th, 1921. He left him surviving a widow, eighty-two years of age; one son, Frank; a daughter, Rose Burchill, wife of the proponent above mentioned; a daughter, Catherine Handwerk; two grandchildren, children of a deceased son, Albert, and the widow of Albert. Albert died in 1919. Testator was of Swiss nationality, and had been active and aggressive in business affairs at Paterson, New Jersey, for many years, and had built up a successful establishment there. For many years his sons, Frank and Albert, worked with him in the business, and Frank seems to have been his most active aide. Another plant had been established and was operated at Allentown, Pennsylvania, which stood

in the name of the two sons, Frank and Albert, until a short time before the testator's death. The two sons appear to have worked for comparatively small compensation by way of salary, but the testator gave them property and money from time to time, covering a long period of years, as he did also his two daughters, Rose and Catherine. In July, 1920, the testator, Franz Ulrich, made a will, which was marked *"Exhibit C 6"* in the case, by which certain bequests were made to his wife for life, and to his son Frank, and his daughters, Rose and Catherine. His wife, Rosina, his son Frank, and his sons-in-law, Langley J. Burchill and Otto Handwerk, were named as the executors of that will. It was drawn by Edward R. Weiss, an attorney-at-law of this state, in the presence of testator's wife. Burchill was not a beneficiary under that will. The mill property at Paterson, and the assets of the Paterson and Allentown plants, were given to his son Frank, subject to certain charges; the plant at Allentown having been meantime made over to the testator at the behest of Burchill, who, a short time previously, had come to work at the plant in Paterson. He had given up a position held by him in New York, and entered the employ of the testator at Paterson at a salary considerably less than he had been receiving, and he testified that he would have taken even less had the testator insisted upon it. Everything appears to have gone along smoothly with the family and the business until Burchill entered the employ of the testator. Frank was the active managing head of the business, especially in the testator's later years. The testator had relied upon Frank almost entirely in the conduct of the business, and it was his express desire that it should continue on in the Ulrich family after his death. Towards the end of the testator's life his health became very much impaired and his mental faculties deteriorated to a marked degree, so much so that he was reduced practically to a state of senility, and was physically unable to take care of his person, and at times he was personally very offensive. Doctor McBride, a medical practitioner, who stands high in this branch of his profession, testified that testator's faculties, mental as well as

physical, were at a low ebb for a number of months prior to the time he made the will, which is the subject of this litigation. It was drawn by Mr. Michael Dunn on March 24th, 1921, on the last of four secret visits made by Burchill and testator to Mr. Dunn's office in Paterson. In Doctor McBride's opinion, during this period, the testator was, generally, not in a fit condition to transact important business or to appreciate the nature of his property and the natural objects of his bounty, although he thought there might have been times when testator was better than at other times, and he was not prepared to say that there could not have been a lucid interval when testator could have known and appreciated those factors  But he was positive in his opinion that, whatever may have been the testator's capacity from time to time to exercise the function of making his will during that period, his impaired physical condition unquestionably affected his mental condition to an extent that would render him peculiarily susceptible to undue influence.

Shortly after Burchill entered the employ of the testator trouble began. Numerous instances appear in the testimony indicating that Burchill was a mischief-maker, and that he misrepresents facts from time to time in order to influence testator's mind against his son Frank. This led, eventually, to the testator's requiring the transfer of the Allentown plant to him, Burchill have represented to him that Frank was really using that business as a competitor. Upon one occasion the father was misled by Burchill into believing that Frank had treated an old customer very meanly by having refused to bill an order sent in by him to the business, whereas the fact was that nothing of the kind had taken place, but that it was another customer whose order had been refused because he was undesirable.

The testator was also led to believe that small peculations were being practiced by Frank and by Frank's son, which diminished the returns of the business, and these statements by Burchill to the testator turned out to be unfounded. Burchill also assumed authority over and the right to direct the work of Frank's son, contrary to his real position, and

this incident was misrepresented to the testator by Burchill. Testator took umbrage at the situation, but when called upon by Burchill to say who was boss, he at first said that he, the testator, was boss, and then, when taunted by Burchill, said that Burchill was boss.

Other instances appear in the testimony which satisfy me that from the time Burchill entered the employ of his father-in-law, the testator, until the testator's death, he pursued a course of secret underhand dealings intended to poison the mind of the testator against his son Frank, and prevail upon the testator to prefer Burchill to his son Frank in the disposition of his property. These difficulties referred to led Frank to withdraw from his father's business on several occasions, but the breaches were healed, and later on he would return. It was after one of these occurrences that the testator made the will of July, 1920, already referred to, which was drawn by Mr. Weiss. Notwithstanding the situation that then existed, it will be observed that he bequeathed practically the business and a large portion of his property to his son Frank by the will of July, 1920.

A few months before the death of the testator, Burchill took him to Mr. Michael Dunn, an attorney-at-law of this state, on four different occasions. Mr. Dunn had not been testator's counsel generally before that, although he testified that he had done some work for him. Burchill had performed professional services for Mr. Dunn when Mr. Dunn was the prosecutor of the pleas of Passaic county. Burchill testified that he did not know the nature and purpose of these visits to Dunn's office until after the fourth visit, when he said that the testator told him on his way home that he had made another will and had left it with Mr. Dunn. After testator's death, however, Burchill declared to the other members of the family that he had no knowledge of a will. It was testified that the will of July, 1920, had been destroyed in Mr. Dunn's office at the time the later will was executed, but upon the trial in the orphans court the prior will was produced by counsel for the caveators, it having been turned over to them by Mrs. Burchill, the wife of the

proponent, who had purloined it from her husband's pocket, Burchill having obtained possession of and secreted it after the testator's death.

After a minute examination of the testimony, I am forced to the conclusion that it was most extraordinary that the testator, in his weakened mental and physical condition, could have refrained from in some way disclosing to his wife, or to some other member of his family, that he made his new will, if he retained any recollection whatever of it. It seems very probable to me that the old man never remembered making the last will, and forgot it as soon as it was made.

When a gift, by deed or otherwise, than by will, is made to one who stands in a fiduciary relation to the donor, that gift is presumed to have been obtained by undue influence. However, while that is not strictly applicable to wills, still the fact of a fiduciary relationship, or a relationship of trust and confidence, coupled with other circumstances, indicating a bias or feeling hostile to the natural objects of one's bounty, usually more readily makes a case of undue influence than without the fiduciary or trust relation. Whether or not I find that a fiduciary relationship existed between the testator and Burchill is, however, not important, because Burchill unquestionably occupied a position of trust and confidence with reference to the testator. The active agency of the beneficiary of a will in procuring it to be drawn in his favor, especially in the absence of those who have at least equal claims upon the justice of the testator, and where the testator is enfeebled by old age and disease, is a circumstance strongly indicative of undue influence.

The former will, which was made in the presence of the testator's wife, and prepared by Mr. Weiss, gave nothing to Burchill. This was made at time, too, when all the circumstances adverse to Frank, urged by proponents as the reason for his disinheritance, already existed. Yet he was made the chief beneficiary under that will. Testator's disease had not then impaired his faculties. Eight months afterwards, mentally and physically weakened, he makes Burchill his

*98 N. J. Eq.*          In re Ulrich.

most favored legatee by the will drawn by Mr. Dunn, prepared on four different occasions, with Burchill in an adjoining room part of the time, and in the presence of testator and Mr. Dunn part of the time, with the whole transaction concealed from every other interested party. Now, why should Burchill be ignored, and the son Frank and Rosina, the testator's wife, favored in the will drawn eight months before in the presence of Mr. Weiss and testator's wife? And why did he give to Burchill this large gift by sacrificing the gifts to his wife and his children, given by the will made only eight months previously?

In the former will "the use and income of the entire estate, real and personal,"· are given to testator's wife during her life.

In the latter will the only gift to the testator's wife is the income of a sum "not exceeding $10,000."

It is argued by proponents that the alleged trouble between testator and his son was the cause of the later discrimination against Frank and in favor of Burchill, but no reason whatever appears why this testator, if of mental capacity and free from influence, should make this great change in the gift to his widow, with whom he remained cordial, in two wills made only eight months apart.

Not only did the new will change the gifts to the son and to the widow, but the widow was removed as an executrix and thus prevented from having any control of the management of the estate, which was put in the hands of Burchill and the grandson, who might handle the same so that there might be little or no income from it.

I am entirely satisfied that this will is the product of the undue influence exercised by Burchill over the testator, actively encouraged by his wife, who worked with him until she realized that by the later will she, too, was discriminated against, and that her husband had overreached her, and then she switched over to, and became one of, the caveators. At the time the purported last will and testament was read, she was so affected by it that she ran out of the house partly unclothed, in a frenzy, and later on produced the former will

and placed it in the hands of the counsel for the caveators, to refute the proponents' main testimony, after abstracting it from her husband's possession, who had suppressed it until that time.

I will advise a decree in accordance with these views, reversing the decree below and refusing to admit the purported will offered for probate.